STATE OF NORTH CAROLINA
COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
24-CVS-

JAMIE DAVIS,

Plaintiff,

v.

WELLPATH LLC

Defendant.

**COMPLAINT**

NOW COMES the Plaintiff, Jamie Davis, by and through counsel, and hereby says and alleges as follows:

**PARTIES**

1. Plaintiff Jamie Davis (hereinafter "Ms. Davis" or "Plaintiff") is a citizen of North Carolina and resides in Mecklenburg County.
2. Defendant Wellpath LLC (hereinafter "Wellpath" or "Defendant") is a foreign corporation authorized to conduct business in the State of North Carolina. Defendant conducts substantial activity in the State of North Carolina. Defendant's registered agent for service of process is Corporate Creations Network Inc., who is located at 15720 Brixham Hill Avenue, Suite 300, Charlotte, North Carolina 28277.
3. At all times herein, LaKarameachia Allen, Shelly Taylor, Latice Hudson, Tracellar Smith, Stevie Conn, and others unnamed herein acted as employees and/or actual, apparent and/or ostensible agents of Defendant Wellpath. Their actions, inactions, deeds, misdeeds, and unlawful conduct is imputed to Defendant Wellpath under the law of agency and the doctrines of *respondeat superior*, ratification and/or condonation.

## JURISDICTION & VENUE

4. As a court of general jurisdiction, this Court has subject matter jurisdiction over Plaintiff's claims, which are founded upon the laws of the United States and the State of North Carolina. Given the amount in controversy and pursuant to N.C. Gen. Stat. § 7A-243, the Superior Court is the proper division of the trial of this case.
5. This Court has personal jurisdiction over Defendant because Defendant conducted substantial activity in the State of North Carolina. Further, the tortious conduct for which Plaintiff seeks relief occurred in the State of North Carolina.
6. This Court can otherwise exercise personal jurisdiction over Defendant pursuant to N.C. Gen. Stat.§ 1-75.4 *et seq*. and other applicable law.
7. Venue is appropriate in Mecklenburg County because Mecklenburg is the county in which the Plaintiff resides.
8. Prior to the filing of this lawsuit, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). On February 9, 2024, the EEOC issued to Plaintiff a right to sue letter, allowing her to file this lawsuit on or before May 9, 2024. As such, Plaintiff has exhausted all available administrative remedies.

## FACTS

9. Wellpath is a medical staffing company that places medical professionals in correctional facilities, inpatient and residential treatment facilities, forensic treatment facilities, and civil commitment centers.
10. Wellpath employs more than 15,000 people in 37 different states.
11. In November of 2020, Ms. Davis and Defendant formed an employee-employer relationship.

12. At the time of the formation of the employee-employer relationship, Wellpath employed more than fifteen persons, subjecting it to the provisions of N.C. Gen. Stat. §§ 143-422.2 and 95-151.

13. Ms. Davis started her employment with Wellpath as a registered nurse.

14. Wellpath had a contract to provide nursing services to the Mecklenburg County Detention Center ("Central") as well as Mecklenburg County's Juvenile Detention Center ("North"). Ms. Davis had safety concerns about working at Central, which houses over 1,000 adult inmates (compared to about 75 juveniles at North), and that Central was an unsafe working environment where it was not uncommon for inmates to throw urine and feces at nurses. North and Central had inmates who were jailed for violent crimes including rape and murder.

15. When Ms. Davis was hired, she was placed at the North facility. Wellpath assured Ms. Davis she would always have a licensed practical nurse ("LPN") working alongside her.

16. Upon information and belief, under the contract with Mecklenburg County, Wellpath was expected to maintain staffing of two nurses each shift at North. However, during Ms. Davis's employment, Wellpath consistently failed to provide two nurses. In fact, Ms. Davis worked without a partner for most of the time during the winter of 2020.

17. A normal workday for Ms. Davis began at 7:00 p.m. When Ms. Davis arrived on site, she received a report from the dayshift nurses as part of the shift change. Ms. Davis started to see patients around 9:30 p.m.; however, her rounds would be suspended if there was a medical emergency, a fight, or a new admission. Ms. Davis did not receive any breaks unless she had a partner from Wellpath on site with her. There were no cameras in the clinic, and so Ms. Davis was dependent upon the Mecklenburg County Sheriff and his

deputies for her safety.

18. Beginning in or about December 2020, Captain Donald Glass came to the medical unit multiple times a night, spending a total of about 2-3 hours with Ms. Davis. Captain Glass repeatedly made sexually inappropriate comments, creating a hostile work environment. Captain Glass repeatedly commented on Ms. Davis's looks, the size of her breasts, and his penis, which he referred to as "tube steak." Captain Glass repeatedly asked Ms. Davis if she wanted his "tube steak." He repeatedly said, "I brought you some tube steak," and would then laugh.

19. Captain Glass also intimidated and threatened Ms. Davis, telling her that no one liked her and that Ms. Davis had better stick with him. Captain Glass instructed Ms. Davis that she should not talk to his staff, and that Captain Glass was in a position to protect Ms. Davis's job. Captain Glass also threatened Ms. Davis that he had the power to get rid of people at the jail. Captain Glass made it clear there would be consequences if Ms. Davis opposed him in any way. Captain Glass repeatedly said, "You do not want them to send you to Central. It's rough there." Captain Glass also said that Ms. Davis would be lucky to be with a man like him because he was financially secure. Captain Glass said, "I'm triple dippin," referring to his disability check, a check from the military, and his check for being a Captain in the Sheriff's office. Captain Glass was extremely comfortable talking this way around Ms. Davis, and assumed that Ms. Davis would continue to tolerate the harassment in order to keep her position.

20. Ms. Davis was afraid to report the hostile work environment created by Captain Glass due to his threats and intimidation. In or around April 2021, Captain Glass showed Ms. Davis his penis while both were in the clinic. Captain Glass told Ms. Davis he thought they would

have sex soon. These comments frightened Ms. Davis. Ms. Davis was worried that Captain Glass would force himself upon her.

21. On April 20, 2021, Ms. Davis reported Captain Glass's sexual harassment and the hostile work environment to Chief Telisa White.

22. On April 21, 2021, Ms. Davis was interviewed by Sergeant Telford with internal affairs for the Mecklenburg County Sheriff. The interview intimidated Ms. Davis, and she was accused of lying.

23. Upon information and belief, Captain Glass resigned from the Mecklenburg County Sheriff following the interview by internal affairs.

24. Following Captain Glass's departure, Ms. Davis's work environment became increasingly hostile. Officers at North, who were friends with Captain Glass, retaliated against Ms. Davis. She was blamed for Captain Glass's departure. The retaliation against Ms. Davis took different forms, including hostility, interference with her work, unprofessionalism, harassment, shunning, no communication, interfering with entry into the building, forcing Ms. Davis to enter through metal detectors multiple times without basis, disrespecting Ms. Davis in front of patients, and not protecting her in the workplace. Officers did nothing to intervene when patients said things to Ms. Davis like: (a) "I'll slap that bitch;" (b) "When can I go home with you?"; (c) "I would fuck the shit out of you." (d) "I am going to call" after my release "to talk to you."

25. Captain Monique Neal, who was friends with Captain Glass, permitted officers to engage in retaliation. Several incidents occurred during Captain Neal's shift that put Ms. Davis's safety in jeopardy, including:

    a. When caring for a patient with known psychiatric issues, Officer Richards left Ms.

Davis alone with the patient to make a phone call, instead of staying with her, which is the proper protocol.

b. When completing an admission to the medical unit, Officer Diamond Crump said she forgot something and left Ms. Davis alone although Officer Crump was required to be present for safety reasons;

c. Officer Mueller fell asleep while Ms. Davis was completing an admission to the medical unit. Ms. Davis did not report this incident because it was on Captain Neal's shift, and she was afraid of retaliation;

d. Officer Christopher King told Ms. Davis that if she did not like the patients being disrespectful, she should "cuss them out." Officer King said he did not want to be involved because he would have to complete paperwork describing what they did and what actions he took in response.

e. Officer Tao failed to intervene or help Ms. Davis when he observed a patient block and taunt Ms. Davis.

26. Officer Miles Fairley also made Ms. Davis uncomfortable at work. Officer Fairley disrespected Ms. Davis in front of patients, and even encouraged patients to disrespect and assault her.

27. On May 23, 2022, Ms. Davis contacted Sergeant Nicole Hailey to report the inappropriate behavior by Officer Miles Fairley. Ms. Davis reported Officer Fairley: (a) yelled and jumped out at Ms. Davis, attempting to scare her in front of inmates; (b) taught inmates a disrespectful song about Ms. Davis; (c) sung the song and/or had inmates sing the song in front of Ms. Davis; (d) telling inmates he would let them out of their cells and give them a honeybun if they would hug Ms. Davis; (f) discussing Ms. Davis's body and appearance

with inmates; (g) telling Ms. Davis he would not keep her safe from potentially dangerous or violent patients. Ms. Davis told Sergeant Hailey that she was afraid to report Officer Fairley due to fear of retaliation. Ms. Davis told Sergeant Hailey she was retaliated against after Ms. Davis reported Captain Glass. Officer Fairley told Ms. Davis he understood that she was the cause of Captain Glass being terminated.

28. On May 24, 2022, Ms. Davis emailed her supervisor at Wellpath, LaKarameachia Allen, to let her know that Ms. Davis reported Officer Fairley's conduct to Sergeant Hailey. Ms. Davis was very concerned about retaliation by her coworkers and other officers because of the way she was treated after reporting Officer Glass's sexual harassment. However, Ms. Davis believed she had to report Officer Fairley because her safety was truly threatened.

29. Ms. Allen requested that Ms. Davis complete an incident report, and that she would forward the incident report to Maj Youngblood to make her aware of the situation.

30. Shelly Taylor was also employed as a nurse with Wellpath, and continued the hostile work environment originally created by Captain Glass. Nurse Taylor treated Ms. Davis differently after she reported Captain Glass's harassment. Ms. Taylor told Ms. Davis that officers came to her asking which nurse got Captain Glass fired. Nurse Taylor knew that Captain Neal stopped speaking with Ms. Davis and prevented her from entering the detention center. Because the custody employees were retaliating against Ms. Davis, Nurse Taylor felt emboldened to make Ms. Davis's work life more difficult as well. Nurse Taylor often left before giving Ms. Davis a report from her shift. Nurse Taylor left Ms. Davis to clean up her mistakes and interfered with patient care.

31. For example, on or about November 24, 2021, Nurse Taylor left after giving a patient the wrong medication. Nurse Taylor did not chart her error, she just said "I gave him the wrong

medication but he's fine, he will sleep it off." The patient had to be sent to the hospital. When the patient requested to speak with the doctor, Ms. Davis scheduled the appointment. However, Nurse Taylor removed the patient from the list to avoid the doctor becoming aware of her medication error. Further, Nurse Taylor failed to perform proper admissions by refusing to take vital signs, record allergies, or complete patient health histories. This conduct put Ms. Davis's nursing license and patient safety at risk.

32. Ms. Davis reported Nurse Taylor's substandard and dangerous care to Defendant's director of nursing, Latice Hudson. After Ms. Davis's report, Ms. Hudson stopped taking Ms. Davis's phone calls, and later resigned. Ms. Davis also reported Nurse Taylor's substandard and dangerous care to her supervisor, LaKarameachia Allen.

33. On June 5, 2022, Ms. Davis made additional reports regarding the dayshift nurses substandard care, which included Nurse Taylor.

34. Due to her concerns for increased retaliation due to her reports of sexual harassment and retaliation, Ms. Davis became increasingly concerned for her own safety, and retained an attorney. On June 8, 2022, Ms. Davis's attorney sent a letter to Wellpath and the Mecklenburg County Sheriff, demanding that Ms. Davis be able to work in safe conditions.

35. On June 10, 2022, Defendant assigned Ms. Davis to Central instead of North as retaliation for her complaints.

36. On June 13, 2022, Ms. Davis was excused from work by her doctor after receiving sclerotherapy.

37. On or about July 19, 2022, Ms. Davis was released by her doctor to return to work with light duty restrictions, and no restrictions starting August 2, 2022. Defendant's director of nursing, Tracellar Smith, told Ms. Davis that she could not return to work until Ms. Davis

was fully healed because there was no work for light duty. However, upon information and belief, other employees were allowed light duty assignments following medical procedures. Upon information and belief, these individuals did not report incidents of sexual harassment and unsafe working conditions.

38. On August 12, 2022, Ms. Davis spoke with Stevie Conn in Defendant's human resources department. Stevie Conn told Ms. Davis that Defendant did not have to provide two nurses during a shift, and that there would be times when Ms. Davis would have to work alone due to staffing shortages. As such, Stevie Conn stated Defendant could not guarantee Ms. Davis's safety while at work. Ms. Davis often reported the safety issues that were rampant at North.

39. On August 16, 2022, Ms. Davis reported to work, but discovered she would be working alone. Ms. Davis was assigned to work with Officer Fairley, the individual who had sexually harassed Ms. Davis and told her that he would not assist her if she was in an unsafe situation. Ms. Davis notified her supervisor by email that she would not be working under those conditions that evening.

40. On August 17, 2022, Ms. Davis received an email from Stevie Conn, informing her that Ms. Davis had voluntarily resigned and that her employment was being separated although Defendant knew Ms. Davis was willing and able to continue working.

41. Defendant terminated Ms. Davis's employment because she refused to submit to sexual harassment and retaliation and because she requested not to work in an unsafe environment.

42. These acts and others were extreme and outrageous and were intentional and/or recklessly perpetrated against Plaintiff by Defendant its employees and/or agents.

43. As a direct and proximate cause of Defendant's unlawful conduct, Ms. Davis has incurred economic damages in terms of loss of earnings and a future loss of earning capacity. Ms. Davis suffered damage to her reputation.

44. Further, as a direct and proximate cause of Defendant's unlawful conduct, Ms. Davis has suffered mental distress, anguish, and other emotional damages.

45. Plaintiff has incurred damages in excess of $25,000 or in such amounts as may be demonstrated at trial.

**FIRST CAUSE OF ACTION**
**(Title XII Sexual Harassment and Discrimination—Hostile Work Environment)**

46. Plaintiff incorporates by reference and re-alleges each of the prior allegations as if fully set forth herein.

47. Plaintiff is a member of a protected class—female.

48. Plaintiff was subjected to unwelcome sexual harassment.

49. The harassment was based upon Plaintiff's sex.

50. The harassment created a hostile work environment.

51. Plaintiff's workplace was permeated with discriminatory behavior that was sufficiently severe or pervasive enough to create a hostile and/or abusive work environment.

52. Plaintiff reported the sexual harassment, and Defendant retaliated against her for it.

53. Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 2000e-2 et seq. prohibits discriminatory treatment in employment on the basis of sex. Sexual harassment and a hostile work environment are prohibited under the statute.

54. The conduct and communications of Defendant and its agents and/or employees substantially interfered with Plaintiff's employment and created an intimidating, hostile, and offensive work environment, in violation of 42 U.S.C. § 2000e-2 et seq.

55. Defendant further violated 42 U.S.C. § 2000e-2 et seq. by:

a. Failing to respond promptly and properly to Ms. Davis's complaints of sexual harassment;

b. Failing to provide Ms. Davis with a safe working environment free from sexual harassment;

c. Failing to take appropriate remedial action when Defendant knew or should have known of the sexual harassment and hostile work environment it had condoned and ratified;

d. Upon information and belief, failing to properly train its agents and/or employees in creating and implementing a meaningful sexual harassment policy;

e. Hiring individuals for certain positions when Defendant knew or should have known that those individuals were unfit for their positions;

f. Failing to appropriately supervise its agents and/or employees when Defendant knew or should have known such individuals were unfit for their positions;

g. Failing to terminate and/or sanction its agents and/or employees for creating and maintaining the sexually offensive and hostile working environment; or

h. Acting in such other ways as may be demonstrated through discovery and trial.

56. Defendant's actions and inactions identified herein constitute sexual harassment and discrimination in violation of the rights secured by Title VII of the Civil Rights Act.

57. As a direct and proximate cause of Defendant's illegal conduct, Plaintiff has suffered injury in the form of, among other things, lost wages, lost pensions and benefits, emotional and mental distress, embarrassment, and humiliation. Therefore, Plaintiff is entitled to monetary damages in an amount exceeding $25,000.00.

58. Plaintiff is entitled to reasonable attorney's fees as provided by law, including 42 U.S.C. § 2000e-5(k).

**SECOND CAUSE OF ACTION**
**(Title XII Sexual Harassment and Discrimination—Retaliatory Discharge)**

59. Plaintiff incorporates by reference and re-alleges each of the prior allegations as if fully set forth herein.

60. Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 2000e-3 et seq. makes it unlawful for an employer to discriminate against any of its employees because the employee has opposed an unlawful employment practice.

61. Plaintiff is a member of a protected class—female.

62. Plaintiff was subjected to unwelcome sexual harassment.

63. The harassment was based upon Plaintiff's sex.

64. Plaintiff's workplace was permeated with discriminatory behavior that was sufficiently severe or pervasive enough to create a hostile and/or abusive work environment.

65. Plaintiff reported the sexual harassment, and Plaintiff's reporting of such conduct constituted protected activity.

66. Due to Plaintiff's reporting of her hostile work environment, Defendant retaliated against Plaintiff. By way of example, Defendant:

    a. Failed to respond promptly and properly to Ms. Davis's complaints of sexual harassment;

    b. Failed to provide Ms. Davis with a safe working environment free from sexual harassment;

c. Failed to take appropriate remedial action when Defendant knew or should have known of the sexual harassment and hostile environment it condoned and ratified;

d. Upon information and belief, failed to properly train its agents and/or employees in creating and implementing a meaningful sexual harassment policy;

e. Hired individuals for certain positions when Defendant knew or should have known that those individuals were unfit for their positions;

f. Failed to appropriately supervise its agents and/or employees when Defendant knew or should have known such individuals were unfit for their positions;

g. Failed to terminate and/or sanction its agents and/or employees for creating and maintaining the sexually offensive and hostile working environment;

h. Assigned Ms. Davis to dangerous working conditions at North;

i. Terminated Ms. Davis's employment; or

j. Acted in such other ways as may be demonstrated through discovery and trial.

67. Plaintiff's reporting of her hostile work environment was a substantial motivating factor in Defendant's adverse action against Plaintiff.

68. Defendant's actions and inactions identified herein constitute sexual harassment and discrimination in violation of the rights secured by Title VII of the Civil Rights Act.

69. As a direct and proximate cause of Defendant's illegal conduct, Plaintiff has suffered injury in the form of, among other things, lost wages, lost pensions and benefits, emotional and mental distress, embarrassment, and humiliation. Therefore, Plaintiff is entitled to monetary damages in an amount exceeding $25,000.00.

70. Plaintiff is entitled to reasonable attorney's fees as provided by law, including 42 U.S.C. § 2000e-5(k).

**THIRD CAUSE OF ACTION**
**(Wrongful Discharge in Violation of Public Policy)**

71. Plaintiff incorporates by reference and re-alleges each of the prior allegations as if fully set forth herein.

72. It is the public policy of the State of North Carolina to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, sex or handicap by employers which regularly employ 15 or more employees.

73. The discharge of Plaintiff from employment with the Defendant was the result of a hostile work environment created, condoned, and ratified by Defendant.

74. Plaintiff's sex was a substantial factor in the creation of the hostile work environment, and Defendant's wrongful and unlawful discharge violated the public policy of State of North Carolina, including N.C. Gen. Stat. §§ 143-422.2 and 95-151.

75. As a direct and proximate result of the Defendant's wrongful discharge in violation of the established public policy of this State, Plaintiff has suffered injury in the form of, among other things, lost wages, lost pensions and benefits, emotional and mental distress, embarrassment, and humiliation. Therefore, Plaintiff is entitled to monetary damages in an amount exceeding $25,000.00.

**FOURTH CAUSE OF ACTION**
**(Breach of Contract)**

76. Plaintiff incorporates by reference and re-alleges each of the prior allegations as if fully set forth herein.

77. There existed a valid and legally binding contract between Plaintiff and Defendant.

78. The contract between Plaintiff and Defendant expressly and/or impliedly promised that Defendant would provide Plaintiff with a safe and accessible work environment, free from sexual harassment.

79. Defendant breached the contract with the Plaintiff by failing to provide Plaintiff with a safe and accessible work environment, free from sexual harassment.

80. As a direct and proximate cause of Defendant's breach of contract, Plaintiff has suffered injury in the form of, among other things, lost wages, lost pensions and benefits, emotional and mental distress, embarrassment, and humiliation. Therefore, Plaintiff is entitled to monetary damages in an amount exceeding $25,000.00.

**FIFTH CAUSE OF ACTION**
**(Negligence, Negligent retention, and Negligent Supervision)**

81. Plaintiff incorporates by reference and re-alleges each of the prior allegations contained herein.

82. Defendant owed Plaintiff a legal duty, as an employee under its care and supervision, to act as a reasonably prudent person under the same or similar circumstances. Defendant breached this duty, and thus acted negligently by:

    a. Failing to properly train its agents and/or employees in creating and implementing a meaningful sexual harassment policy;

    b. Hiring individuals for certain positions when Defendant knew or should have known that those individuals were unfit for their positions;

    c. Failing to adequately train its agents and employees in adhering to the commands of a legitimate sexual harassment policy;

    d. Failing to supervise its agents and/or employees when Defendant knew or reasonably should have known that those individuals were unfit for their positions;

e. Failing to adequately respond to legitimate sexual harassment complaints voiced by the Plaintiff in violation of established law and public policy;

f. Failing to terminate and/or sanction its employees and/or agents for creating and maintaining the sexually offensive and hostile work environment;

g. Failing to follow, enforce, adhere to or comply with one or more of the standards, rules, regulations, policies, procedures, protocols or manual provisions then in effect and applicable to this Defendant; and/or

h. Acting in such other negligent ways as may be demonstrated at trial.

83. It was foreseeable that Plaintiff would suffer harm as a result of Defendant's conduct and that Defendant should have exercised reasonable care to prevent such harm.

84. As a direct and proximate result of Defendant's negligence, Plaintiff has suffered injury in the form of, among other things, lost wages, lost pensions and benefits, emotional and mental distress, embarrassment, and humiliation. Therefore, Plaintiff is entitled to monetary damages in an amount exceeding $25,000.00.

85. Defendants' conduct amounts to negligence and/or gross negligence.

**SIXTH CAUSE OF ACTION**
**(Infliction of Emotional Distress)**

86. Plaintiff incorporates by reference and re-alleges each of the prior allegations as if fully contained herein.

87. Defendant engaged in extreme and outrageous conduct by creating the hostile work environment, sexually harassing the Plaintiff, and retaliating against Plaintiff for reporting the hostile environment.

88. Defendant engaged in such conduct with a reckless indifference to the likelihood that these acts would cause severe emotional distress.

89. Defendant's actions have, in fact, caused Plaintiff to suffer severe emotional distress.

90. Plaintiff's emotional distress has been diagnosed by a trained medical professional.

91. Plaintiff is entitled to damages in excess of $25,000.00.

**SEVENTH CAUSE OF ACTION**
**(Punitive Damages)**

92. Plaintiff incorporates by reference and re-alleges each of the prior allegations contained herein.

93. The actions and/or inactions of Defendant described herein were done intentionally, maliciously, and/or wantonly with a reckless indifference to the rights of the Plaintiff.

94. Such willful and wanton conduct amounts to a conscious indifference for the rights of Plaintiff when Defendant knew or should have known that such conduct would likely cause harm.

95. Defendants should be subjected to the imposition of punitive damages in such amounts as may be awarded by a jury, under both the common law and the constitutional law of the State of North Carolina, and pursuant to N.C. Gen. Stat. § 1D-1 *et seq.*

This is the 8th day of May 2024.

/s/ Thomas D. Bumgardner

______________________________

Thomas D. Bumgardner
LAW OFFICE OF THOMAS D. BUMGARDNER, PLLC
13925 Ballantyne Corporate Place, Suite 280
Charlotte, North Carolina 28277
Phone: (704)-887-4981
Facsimile: (704)-496-2280
Email: thomas@ballantynelegal.com
*Attorney for the Plaintiff*

# STATE OF NORTH CAROLINA

MECKLENBURG County

File No. 24CV020710-590

In The General Court Of Justice
☐ District ☒ Superior Court Division

| | |
|---|---|
| *Name Of Plaintiff*<br>JAMIE DAVIS | **CIVIL SUMMONS**<br>☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)** |
| *Address*<br>c/o Thomas Bumgardner; 13925 Ballantyne Corporate Pl; Ste 280 | |
| *City, State, Zip*<br>Charlotte NC 28277 | |
| **VERSUS** | G.S. 1A-1, Rules 3 and 4 |
| *Name Of Defendant(s)*<br>WELLPATH LLC | *Date Original Summons Issued*<br><br>*Date(s) Subsequent Summons(es) Issued* |

**To Each Of The Defendant(s) Named Below:**

| | |
|---|---|
| *Name And Address Of Defendant 1*<br>WELLPATH LLC<br>c/o Registered Agent Corporate Creations Network, Inc.<br>15720 Brixham Hill Avenue; Suite 300<br>Charlotte NC 28277 | *Name And Address Of Defendant 2* |

**IMPORTANT! You have been sued! These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!**

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales. ¡NO TIRE estos papeles!**
**Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!**

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and
2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| | |
|---|---|
| *Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)*<br>Thomas D. Bumgardner<br>13925 Ballantyne Corporate Place<br>Suite 280<br>Charlotte NC 28277 | *Date Issued* 5/8/2024 *Time* 11:06:48 am ☐ AM ☐ PM<br>*Signature* /s/ Andrew Yeaman<br>☒ *Deputy CSC* ☐ *Assistant CSC* ☐ *Clerk Of Superior Court* |

| | |
|---|---|
| ☐ ENDORSEMENT (ASSESS FEE)<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | *Date Of Endorsement* *Time* ☐ AM ☐ PM<br>*Signature*<br>☐ *Deputy CSC* ☐ *Assistant CSC* ☐ *Clerk Of Superior Court* |

**NOTE TO PARTIES:** *Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

(Over)


© 2023 Administrative Office of the Courts

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|
| | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

| ☐ Acceptance of service. Summons and complaint received by: ☐ Defendant 1. ☐ Other: *(type or print name)* | *Date Accepted* | *Signature* |
|---|---|---|
| | | |

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|
| | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

| ☐ Acceptance of service. Summons and complaint received by: ☐ Defendant 2. ☐ Other: *(type or print name)* | *Date Accepted* | *Signature* |
|---|---|---|
| | | |

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

| | |
|---|---|
| *Service Fee Paid* $ | *Signature Of Deputy Sheriff Making Return* |
| *Date Received* | *Name Of Sheriff (type or print)* |
| *Date Of Return* | *County Of Sheriff* |


© 2023 Administrative Office of the Courts

**STATE OF NORTH CAROLINA**

MECKLENBERG County

File No. 24CV020710-590

In The General Court Of Justice
☐ District ☐ Superior Court Division

# GENERAL CIVIL ACTION COVER SHEET

☒ INITIAL FILING ☐ SUBSEQUENT FILING

Rule 5(b) of the General Rules of Practice for the Superior and District Courts

*Name And Address Of Plaintiff 1*
Jamie Davis
c/o Thomas Bumgardner
13925 Ballantyne Corporate Place, Suite 280
Charlotte NC 28277

*Name And Address Of Plaintiff 2*

**VERSUS**

*Name And Address Of Defendant 1*
WELLPATH LLC
c/o Registered Agent Corporate Creations Network, Inc
15720 Brixham Hill Avenue; Suite 300
Charlotte NC 28277

*Summons Submitted*
☒ Yes ☐ No

*Name And Address Of Defendant 2*

*Summons Submitted*
☐ Yes ☐ No

*Name And Address Of Attorney Or Party, If Not Represented (complete for initial appearance or change of address)*
Thomas D. Bumgardner
13925 Ballantyne Corporate Place
Suite 280
Charlotte NC 28277

| Telephone No. | Cellular Telephone No. |
|---|---|
| 704-887-4981 | 704-813-4265 |

| NC Attorney Bar No. | Attorney Email Address |
|---|---|
| 38064 | thomas@ballantynelegal.com |

☒ Initial Appearance in Case ☐ Change of Address

| Name Of Firm | Fax No. |
|---|---|
| aw Office of Thomas D. Bumgardner, PLLC | 704-496-2280 |

*Counsel For*
☒ All Plaintiffs ☐ All Defendants ☐ Only: *(list party(ies) represented)*
Jamie Davis

☐ Jury Demanded In Pleading ☐ Complex Litigation ☐ Stipulate to Arbitration

## TYPE OF PLEADING

*(check all that apply)*

- ☐ Amend (AMND)
- ☐ Amended Answer/Reply (AMND-Response)
- ☐ Amended Complaint (AMND)
- ☐ Assess Costs (COST)
- ☐ Answer/Reply (ANSW-Response) (*see Note*)
- ☐ Change Venue (CHVN)
- ☒ Complaint (COMP)
- ☐ Confession Of Judgment (CNFJ)
- ☐ Consent Order (CONS)
- ☐ Consolidate (CNSL)
- ☐ Contempt (CNTP)
- ☐ Continue (CNTN)
- ☐ Compel (CMPL)
- ☐ Counterclaim (CTCL) *Assess Court Costs*
- ☐ Crossclaim *(list on back)* (CRSS) *Assess Court Costs*
- ☐ Dismiss (DISM) *Assess Court Costs*
- ☐ Exempt/Waive Mediation (EXMD)
- ☐ Extend Statute Of Limitations, Rule 9 (ESOL)
- ☐ Extend Time For Complaint (EXCO)
- ☐ Failure To Join Necessary Party (FJNP)
- ☐ Failure To State A Claim (FASC)
- ☐ Implementation Of Wage Withholding In Non-IV-D Cases (OTHR)
- ☐ Improper Venue/Division (IMVN)
- ☐ Including Attorney's Fees (ATTY)
- ☐ Intervene (INTR)
- ☐ Interplead (OTHR)
- ☐ Lack Of Jurisdiction (Person) (LJPN)
- ☐ Lack Of Jurisdiction (Subject Matter) (LJSM)
- ☐ Modification Of Child Support In IV-D Actions (MSUP)
- ☐ Notice Of Dismissal With Or Without Prejudice (VOLD)
- ☐ Petition To Sue As Indigent (OTHR)
- ☐ Rule 12 Motion In Lieu Of Answer (MDLA)
- ☐ Sanctions (SANC)
- ☐ Set Aside (OTHR)
- ☐ Show Cause (SHOW)
- ☐ Transfer (TRFR)
- ☐ Third Party Complaint *(list Third Party Defendants on back)* (TPCL)
- ☐ Vacate/Modify Judgment (VCMD)
- ☐ Withdraw As Counsel (WDCN)
- ☐ Other *(specify and list each separately)*

**NOTE:** *All filings in civil actions shall include as the first page of the filing a cover sheet summarizing the critical elements of the filing in a format prescribed by the Administrative Office of the Courts, and the Clerk of Superior Court shall require a party to refile a filing which does not include the required cover sheet. For subsequent filings in civil actions, the filing party must include either a General Civil (AOC-CV-751), Motion (AOC-CV-752), or Court Action (AOC-CV-753) cover sheet.*



AOC-CV-751, Rev. 3/19, © 2019 Administrative Office of the Courts

## CLAIMS FOR RELIEF

- ☐ Administrative Appeal (ADMA)
- ☐ Appointment Of Receiver (APRC)
- ☐ Attachment/Garnishment (ATTC)
- ☐ Claim And Delivery (CLMD)
- ☐ Collection On Account (ACCT)
- ☐ Condemnation (CNDM)
- ☒ Contract (CNTR)
- ☐ Discovery Scheduling Order (DSCH)
- ☐ Injunction (INJU)
- ☐ Limited Driving Privilege - Out-Of-State Convictions (PLDP)
- ☐ Medical Malpractice (MDML)
- ☐ Minor Settlement (MSTL)
- ☐ Money Owed (MNYO)
- ☐ Negligence - Motor Vehicle (MVNG)
- ☒ Negligence - Other (NEGO)
- ☐ Motor Vehicle Lien G.S. Chapter 44A (MVLN)
- ☐ Possession Of Personal Property (POPP)
- ☐ Product Liability (PROD)
- ☐ Real Property (RLPR)
- ☐ Specific Performance (SPPR)
- ☒ Other *(specify and list each separately)*
  Hostile Work Enviornment

| Date | Signature Of Attorney/Party |
|---|---|
| 05/08/2024 | |

**FEES IN G.S. 7A-308 APPLY**
Assert Right Of Access (ARAS)
Substitution Of Trustee (Judicial Foreclosure) (RSOT)
Supplemental Procedures (SUPR)

**PRO HAC VICE FEES APPLY**
Motion For Out-Of-State Attorney To Appear In NC Courts In A Civil Or Criminal Matter (Out-Of-State Attorney/Pro Hac Vice Fee)

| No. | ☐ Additional Plaintiff(s) |
|---|---|
| | |
| | |
| | |
| | |
| | |

| No. | ☐ Additional Defendant(s) ☐ Third Party Defendant(s) | Summons Submitted |
|---|---|---|
| | | ☐ Yes ☐ No |
| | | ☐ Yes ☐ No |
| | | ☐ Yes ☐ No |
| | | ☐ Yes ☐ No |
| | | ☐ Yes ☐ No |

*Plaintiff(s) Against Whom Counterclaim Asserted*

*Defendant(s) Against Whom Crossclaim Asserted*


© 2019 Administrative Office of the Courts

STATE OF NORTH CAROLINA
COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
24-CVS-20710

JAMIE DAVIS,

Plaintiff,

v.

WELLPATH LLC

Defendant.

**AFFIDAVIT OF SERVICE**

THOMAS D. BUMGARDNER, being first duly sworn, deposes and says as follows:

1. I am an attorney, licensed to practice law in the State of North Carolina, having been so licensed in 2008. I represent the Plaintiff, Jamie Davis in this action.

2. On May 9, 2024 I deposited a filed copy of the summons and complaint with the Federal Express. Federal Express is a designated delivery service authorized pursuant to 26 U.S.C. § 7502(f)(2), and served upon the Defendant as follows:

   WELLPATH, LLC
   c/o Registered Agent Corporate Creations Network, Inc.
   1570 Brixham Hill Avenue
   Suite 300
   Charlotte, NC 28277

3. Service was, in fact, made upon the Defendant on May 10, 2024, as evidenced by the attached proof of delivery receipt.

This is the 17 day of May 2024.

Thomas D. Bumgardner

Sworn to and subscribed before me,
This is the 17 day of May 2024.
Sarah Sellitti (Seal)
Notary Public
My Commission Expires:
November 3, 2027

SARAH SELLITTI
My Comm. Expires
NOTARY PUBLIC
11/3/2027
UNION COUNTY, NC

FedEx

May 17, 2024

Dear Customer,

The following is the proof-of-delivery for tracking number: 776312966380

**Delivery Information:**

| | | | |
|---|---|---|---|
| **Status:** | Delivered | **Delivered To:** | Receptionist/Front Desk |
| **Signed for by:** | A.TINKA | **Delivery Location:** | 15720 BRIXHAM HILL AVE 30 |
| **Service type:** | FedEx 2Day | | |
| **Special Handling:** | Deliver Weekday;<br>Adult Signature Required | | CHARLOTTE, NC, 28277 |
| | | **Delivery date:** | May 10, 2024 10:43 |

**Shipping Information:**

| | | | |
|---|---|---|---|
| **Tracking number:** | 776312966380 | **Ship Date:** | May 9, 2024 |
| | | **Weight:** | 0.5 LB/0.23 KG |

**Recipient:**
c/o Registered Agent Corporate, WELLPATH LLC
1570 Brixham Hill Avenue Suite 300
CHARLOTTE, NC, US, 28277

**Shipper:**
Thomas Bumgardner,
13925 Ballantyne Corporate Pl.
Suite 280
Charlotte, NC, US, 28277

**Reference** DAVIS

